The case today is number 181252, Theramont Cornille et al. v. Council 93, AFSCME. Thank you. Mr. Stern, good morning. Good morning. Nice to see you again, Your Honors. Nice to meet you. May it please the Court, my name is Mark Stern. I represent the plaintiffs' appellants on counts 2 and 3. I'd like to address those counts in approximately six minutes and reserve the rest of my time for rebuttal with permission of the Court. Very well. Thank you. So, as to count 2, the defendants concede that there is a right to repeal from a deactivation, as they called it, which is really taken back a bit shorter, to the International Executive Board. And they further concede that that action can't be taken by the President until he has approval of the Board. Where did they concede that last point? They conceded he could do it and you could appeal. I didn't see where they said that he couldn't do it until the Board had asked him. The Constitution says he can only do it with the approval of the Executive Board. It says that in Article 5, Section 6. It's the exact same language as in Article 9, Section 35. So the only question here is whether the June 7th letter and the June 13th email following up that letter requested such an appeal. And at the time that those letters were written, the plaintiffs had been told that they had been deactivated and the deactivation had actually been implemented, but it had never been brought to the IEB. In fact, the indisputed counsel, I think you argue that until you actually filed suit and got into discovery, until then there was still some uncertainty as to when the deactivation took place. Is that correct? There was never any statement by the defendants as to the actual time the deactivation occurred until discovery just the week before trial. So I gather it's your position because of that uncertainty that you felt compelled to phrase your letter in the alternative. Is that how you felt? Exactly. That is our position. The district court's error, as you see it, is that it focused only on one of the alternatives and did not note the other alternative in which you argue. You clearly said if the letter that you were referring to was in the view of the international deactivation letter, we are appealing. That is correct. And if not, we will appeal when we are notified, which of course we were never notified after it actually occurred. I sent an email the following week saying that on June 7th my client immediately appealed that decision. So there was no ambiguity about that matter. Given the present status of this case, what would be the purpose of the appeal? What would you be hoping to gain by the appeal? Well, this brings us to count three. The question before the court under count three was whether the defendants would have acted in the same way they did if the plaintiffs had not engaged in activities which the defendants conceived were extensive LMRDA-protected activities, which engendered hostility on the parts of some or all of them. That question is the question that should, in the first instance, under the principles of deference to internal union processes, go to the body within the union that is responsible for ultimately deciding that. And it would seem to me that would be the appropriate thing to do, to give us the right to a hearing and send it to the IAB in the first instance to determine whether there were suitable alternatives that didn't reek of retaliation or that were better suited for union processes and the like. Let me take you back to your opening premise in my question. I don't see in Article V, Section 6 this notion that the President has to act subject to the approval when it comes to a matter relating to jurisdiction. To issue a charter that's subject to approval, but when it gets to his ability to determine jurisdiction of the affiliate bodies, it says subject to an appeal, not approval. I'm trying to get to the right section. I'm sorry. I believe I quoted it in both my original and responsive briefs, Your Honor. Your whole appeal is predicated on the fact that they didn't comply. It says, the International President, subject to the approval of the International Executive Board, shall issue charters to... Let's pause there. So he's got to have approval to issue a charter, but then it says, and shall, subject to an appeal, determine all matters relating to the jurisdiction of the affiliate bodies. It says, the International President, subject to the approval of the International Executive Board, shall have the authority to negotiate and consummate on such terms and conditions as the International President considers appropriate, mergers, consolidations with organizations. The terms and conditions may include waiver. They say the authority of the International President to take away a charter is derived from his authority to issue it. No, they say it's derived from his ability to determine the jurisdiction and proper affiliations of the subordinate bodies. No, that's different. That's a different matter entirely. They say, have said throughout this case, that the ability to take a charter away is derived from the ability to grant it. And then, let's assume, even if you were right on that, on June 12th, didn't they approve the deactivation? No. The letter is saying they did, dated June 12th. On June 12th, the President received the approval, yes, and his decisions with their approval is subject to an appeal to the IAEB. When they give their approval, they don't have any information about the nature of why this decision was made or the like. They simply have, I want to merge these two, and do you approve? And that is subject to a hearing if requested. A hearing? Where do you get a hearing out of Article 6, out of Article 5, Section 6? Well, subject to an appeal to the International Executive Board. Right. So you sent in a letter that I think you've asked us to construe as a conditional appeal. They sent you back a letter from the General Counsel. Then, after that, you filed nothing further, and on June 12th, they approved. Well, we filed something further, an email, following up the General Counsel letter on the same day that the General Counsel letter was sent to us. Then, the following two days, they had the International Executive meeting, and that's when the approval was given. And we never received any notification of that until the day, the week before the trial, in discovery. I believe, Mike, it shows me it's having time, but. Over. Over. Okay. Thank you, Your Honor. I just want to say one other quick thing, because you're using my time. The standard, judge did not use the standard for a premonitory case in this instance and go to the next step of examining the but-for. The standard for a premonitory case is not the same standard as a summary judgment or a final decision. It is a baseline showing that there were possibilities. Thank you. Mr. Kelly, good morning. Good morning, Your Honor. May it please the Court, together with Sasha Gilliam, we represent AFSCME International and Council 93, the New England affiliate. And I'd like to make three points. The first one has to do with the timeliness of this appeal. The second one has to do with the reason for deactivating Local 402. And the final one has to do with this question of whether the local claimed an appeal. This has given me an opportunity to look at Appellate Rule 4. Appellate Rule 4 embodies the Final Judgment Rule by prescribing when appeals from judgments may be made. Its basic proposition is you must file within 30 days after the judgment. The judgment is a particular document that the district court files, and in this case it was filed on December 4th. My clients were agreed by the ruling on Count 1 and filed a Notice of Appeal on January 2nd. Now the rule says that if your opposite party files a Notice of Appeal, you get an additional 14 days. So that would set the time for the plaintiff's appeal to be January 16th. But the rule also says there are certain motions that toll the time for filing an appeal. In this case, both parties filed Rule 59 motions and they were denied. They were denied on December 22nd. The rule says that those motions toll and that the denial or allowance of the disposition of the motion resets the time. So December 22nd. Now we have 30 days from December 22nd and that would be January 21st as the time for an appeal. Now, plaintiffs also filed on January 5th, a couple of days after we filed a Notice of Appeal, they filed what is construed to be a Rule 52B motion for findings of fact. Now Rule 4 also includes a Rule 52B motion among the motions that toll the time for filing an appeal. However, the rule says a timely filed 52B motion. Didn't the plaintiffs file a motion with the court to extend the time for filing an appeal? That motion is the motion that was filed on January 5th. Right, and didn't the court grant that motion to extend the time for filing an appeal? The court granted that motion on January 8th. And the court may have erred by making it an open-ended extension beyond what the court was supposed to do, but doesn't our jurisprudence tell us that that type of error is non-jurisdictional and we can simply ignore the error? Well, I think Hamer says that permission to the district court to extend for an additional 30 days is not jurisdictional, because it's not in any statute. But it is still a claim processing rule. And we have equitable discretion whether to enforce it or not in a particular case? I'm not sure about that, Your Honor. The way I read Hamer is that the opposite party can waive the benefit of that rule or forfeit it. And the inquisition in Hamer was whether they had done so. In that case, the district court judge, shortly before the 30 days was up for the time for appeal, the lawyers filed a motion to withdraw and a motion to extend the time for 60 days. When they moved for the open-ended extension, did you go to the district court and say, hey, you can't do this more than 30 days? That's sort of the waiver argument, Your Honor. So I think the answer is no, you didn't do that. Say it again? I think the answer is no. But I will say, in my own defense, the motion was filed on Friday, January 5th and allowed on Monday, January 8th. So plaintiff's counsel made a mistake, you then made a mistake, and the district court made a mistake all with respect to a non-jurisdictional extension. So at least as far as one judge up here is concerned, you might want to get on to the merits before all your time is up, but my colleagues may have more questions for you. No, I was hoping to hear the merits at some point, too. All right. I take the tip, Your Honor, and I appreciate it. The reason for the deactivation was there were no longer people working in the jurisdiction of Local 402. This is the mental health industry in Massachusetts. And back in the 80s, there were mental health centers. One of them was the Fernald Center in Waltham. One of them was the Rentham Center down in Rentham. And one of them was the Hogan Center up in Danville. Counsel, you say the reason for the deactivation was this administrative change you're describing. That's very much in dispute, is it not? You're asserting an established proposition that that was the reason. That's the heart of the dispute. They say, no, that wasn't the reason. The deactivation was for retaliation, which they then tried to establish at some length at the trial. Well, I guess one response, Your Honor, I would make was that if you're going to bring a retaliation case, you ought to do the discovery that accompanies one. This case was not a retaliation case. This case was about protecting the right of Mr. Conneal, who is now the second person from Local 646, to serve on the executive board. This was about protecting his right to sit on the executive board. And the rationale for the deactivation, which is made by the International, the International is the one that officially does it, was clear. It was clear. And the plaintiffs in this case, and I want you to compare. There were three local unions. 646 is the one down in Redtham. 402 is the one in Lawtham. And 1730 is the one up in Danvers. Back in the 1990s, 646 and 1730 asked the International to amend our jurisdiction so it includes not only the Redtham Center and the Hogan Center, but also the community-based residences where the patients were being transferred because the Commonwealth was decentralizing. Now Local 402 engaged in political battles to keep Fernwood open, but they never asked the International to change their jurisdiction so that they now represent people in community-based homes. As a matter of fact, that's what they did. When the Fernwood patients left and went into these community-based settings, the workers followed them. But the jurisdictional grant that the International gave to Local 402 was never changed. It was only the Fernwood Center. They make a disparate treatment argument. They say that the way in which you treated those other locals, you could have treated them the same way and that you failed to do that, and that's further evidence of retaliation as they see it, that the International did not treat them in a comparable way. Well, it was 1996 when the other local unions changed their jurisdiction, Your Honor. This local never did until they got notice that you're being deactivated. And then the light finally dawned on Marble Head. Oh, we need to change our jurisdiction. Well, it hadn't been changed. And the plaintiff testified about three or four times that it was an oversight. But whether it was an oversight or whether they were politically supportive of keeping Fernwood open, it never happened. And so I submit to you from any rational decision-maker who's deciding this question is going to do it that way, there are no workers in the jurisdiction of one of the locals. So why was the – we're talking now about count three. The district court made two statements which strike me as a bit odd. One, the court says there was no evidence, no evidence of retaliation. Given the record in this case, that strikes me as a bit of an overstatement. And then the court goes on to say that it's going to defer to the rationale offered by the international. Under the prevailing standard, if the district court was going to accept the rationale offered by the international, did it have to make a finding by a preponderance of the evidence? It can't just say, well, I'm going to defer to that rationale. What's the basis in law for that position of deference? I don't – I am not aware of exactly what you're referring to. I'm referring to the written decision of the district court. But in terms of what it was that the district court was deferring to, there was an enormous battle over whether what had happened was a merger or consolidation under Section 35, which is what the plaintiffs filed this lawsuit on. Section 35, which talks about mergers, says before the merger, we're going to give you a hearing. That's the hearing we've been hearing about. The international said, no, no, no, this is not a merger. It's not a consolidation. It's a deactivation. That takes us back to Section 6, which is where Judge Zarkaian was discussing the question of appeal. This was never a case in which the plaintiffs recognized the authority of the international and chose to take an appeal from a decision. It was, you got it wrong. This is a merger, and we're entitled to the status quo and have a hearing before the merger. That's what this case was about, Your Honor. My time has expired. Yes, thank you. Thank you, Your Honor. May it please the Court. Count three is entitled retaliation for exercise of free speech. It certainly was exactly what we claimed, as the Court noted. Number two, as far as headings go, our Rule 59 motion did not say it was a Rule 52 motion in its heading. But on page five of that motion, I count six times, it said to the District Court, you failed to make Rule 52 findings and you were required to do so. In response to that, that's how the Court viewed it. The Court said, changed I might make further findings to I will make further findings. And to paraphrase what the Court said, saying I will do something in the future is not the same thing as doing it. On May 15th, that's when the Court granted the relief that we sought and that it said it would allow in our timely 20 days after judgment Rule 59 motion. Now, the three, the supposed reasons of three, nobody worked in the jurisdiction anymore. Those reasons existed two years, I'm sorry, four years before this incident of deactivation occurred. What happened in between was Conneal ran for office again. The staff and officers vigorously opposed his reelection and he won reelection. Therefore, the only way to get him off the Council Executive Board was to deactivate. And the question is, and the other unions that supposedly did this back in 1996, if you look in the addendum, pages 43 to 64, you will find that each one of them had their charter rewritten in May of 2017 to allow them to have jurisdiction over the 311 workers from Local 402. It wasn't 1996. It was in 2017 after 402 asked for its charter to be revised and it was denied that relief. Then the other locals had their charters revised and that's in the documentary evidence. And as far as the notion of, so I think that's, it's very, very much in dispute whether this was done as an act of retaliation, whether there were better choices that could have been made, but for the protected activities of the plaintiffs. Thank you. Thank you.